## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN BARANSKI and JAMES LACOURTE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>- against –<br><br>NCO FINANCIAL SYSTEMS, INC.,<br><br>Defendant. | Case No. 13-cv-6349-ILG-JMA<br><br>I. Leo Glasser, USDJ<br>Joan M. Azrack, USMJ<br><br>**JURY TRIAL DEMANDED** |

### AMENDED CLASS ACTION COMPLAINT

Plaintiffs John Baranski and James LaCourte, by and through their counsel, on behalf of themselves and on behalf of the Class and Subclass defined herein, allege based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters based upon the investigations conducted by and through Plaintiffs' attorneys, against Defendant NCO Financial Systems, Inc. ("NCOF" or "Defendant"), for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.* and New York General Business Law ("GBL") §399-p, and Connecticut Unfair Trade Practices Act General Statutes ("CUTPA"), §42-110a, *et seq.*

### NATURE OF THE ACTION

1.      Plaintiffs bring this action on behalf of themselves and a Class of consumers who received unauthorized calls made by Defendant to their cellular telephones using NCOF's automated telephone dialing system.  That conduct violates the TCPA, and was perpetrated by Defendant on Plaintiffs.  It is reasonably believed that Defendant's TCPA violations have harmed many thousands of other consumers nationwide.

1

2.      Plaintiff John Baranski also brings this action on behalf of himself and a Subclass of Connecticut residents based on Defendant's actions in violation of CUTPA.

3.      Plaintiff James LaCourte also brings this action on behalf of himself and a Subclass of New York residents who received standardized, prerecorded telephone messages from NCOF, using its automatic dialing-announcing device that failed to comply with the mandatory disclosures set forth in GBL §399-p.

4.      Plaintiffs and members of the Class and Subclasses defined below, were each injured as a direct and proximate result of Defendant's violations of the TCPA, GBL §399-p, and/or CUTPA, and are entitled to recover their actual damages or the statutory remedies provided by those statutes.  In addition, because Defendant's unlawful acts were knowing and willful, Plaintiffs, the Class, and Subclasses are entitled to additional remedies and damages.

5.      Plaintiffs and the members of the Class and Subclasses further seek to permanently enjoin Defendant's violations of the TCPA, GBL §399-p, and CUTPA §42-110a.

## JURISDICTION AND VENUE

6.      Plaintiffs invoke the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for all civil actions arising under the laws of the United States, and pursuant to 47 U.S.C. §227(b)(3)).  This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

7.      Plaintiffs further invoke the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §1332(d).

8.      This Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged herein took place in New York.  Defendant is authorized to do

business in New York and has sufficient minimum contacts with New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under 28 U.S.C. §1391.

## THE PARTIES

10.      Plaintiff James LaCourte is domiciled in, and is a citizen of, Huntington, New York.

11.      Plaintiff John Baranski is domiciled in, and a citizen of, North Grosvenordale, Connecticut.

12.      Defendant NCOF is a Pennsylvania corporation with a principle place of business and/or headquarters located at 507 Prudential Road, Horsham, Pennsylvania, 19044. NCOF is the largest debt collector in the United States.  According to its parent company's public filings made during the Class Period, NCOF had annual revenues exceeding $1 billion. According to those public filings, and NCOF's and its parent's websites, NCOF employs tens of thousands of debt collectors, who make hundreds of thousands of telephone calls annually to consumers' cellular telephones and residences, nationwide and to consumers in New York and Connecticut.

## STATEMENT OF FACTS

13.      For use with its debt collection operations nationwide, Defendant employs a telephone dialing system.  That telephone dialing system makes telephone calls to consumers' homes and cellular telephone numbers both without the direct assistance of any person, and at the "push of a button" by Defendant's debt collectors, employees and agents.

14.     Defendant's telephone dialing system is an "automatic telephone dialing system" as defined by the TCPA, and as clarified by the Federal Communications Commission.

15.     Defendant's telephone dialing system is an "automatic dialing-announcing device" as defined by GBL §399-p, when used to leave prerecorded messages on consumers' residential or cellular telephones.

16.     Defendant's current and/or former employees confirm that Defendant's telephone system operates as an automatic telephone dialing system, regardless of whether the telephone call to the consumer is made by a live person with the assistance of the telephone system or prerecorded voice.

17.     In addition to consumers' telephone numbers provided to Defendant by its creditor clients, Defendant assists, permits, and provides the resources to its debt collectors, employees, and agents to "skip trace" other telephone numbers, including cellular telephone numbers.

18.      In addition to consumers' telephone numbers provided to Defendant by its creditor clients, Defendant provides its debt collectors, employees, and agents with access to a Lexis / Nexis service to search for consumers' cellular telephone numbers.  Defendant may subscribe to additional services or vendors to obtain consumers' cellular telephone numbers.

19.     Defendant's debt collectors, employees, and agents routinely made calls to consumers' cellular telephones using Defendants' automatic telephone dialing system when no lawful, prior consent was provided by the consumer to call his or her cellular telephone.

20.     Defendant has available technology to know when its automatic telephone dialing system, debt collectors, employees, or agents are calling a cellular telephone number.

4

21.    A Federal Communications Commission ("FCC") "Consumer Guide" styled

*Unwanted Telephone Marketing Calls*, last reviewed by the FCC, on June 14, 2103, states:

> **Automatic Telephone Dialing Systems and Artificial or Prerecorded Voice Calls**
>
> The FCC has specific rules for automatic telephone dialing systems, also known as "autodialers." These devices can be particularly annoying and generate many consumer complaints. The rules regarding automatically dialed and prerecorded calls apply whether or not you have registered your home phone number(s) on the national Do-Not-Call list.
>
> Autodialers can produce, store and dial telephone numbers using a random or sequential number generator. They often place artificial (computerized) or prerecorded voice calls. The use of autodialers, including predictive dialers, often results in abandoned calls – hang-ups or "dead air." Except for emergency calls or calls made with the prior **express consent of the person being called, autodialers and any artificial or prerecorded voice messages may not be used to contact numbers assigned to:**
>
> - any emergency telephone line;
>
> - the telephone line of any guest or patient room at a hospital, health care facility, home for the elderly or similar establishment;
>
> - a paging service, wireless phone service (including both voice calls and text messages) or other commercial mobile radio service; or
>
> - any other service for which the person being called would be charged for the call.

Emphasis in original.

## TELEPHONE CALLS TO PLAINTIFF JAMES LACOURTE'S CELLULAR TELEPHONE

22.    Plaintiff James LaCourte was the holder of an American Express credit or charge

card.  That credit or charge card was cancelled by American Express in 2008.  As of August

2010, Plaintiff LaCourte owed no monies to American Express.

23.    Plaintiff LaCourte did not provide American Express with lawful consent to call

his cellular telephone.

24.     As confirmed by an October 29, 2013 deposition of an American Express employee, at page 22, Plaintiff LaCourte's cellular telephone number is not listed in American Express' computer file among its contact telephone numbers for Plaintiff LaCourte pertaining to his former American Express credit or charge card account.[1]

25.     Plaintiff LaCourte did not provide NCOF with lawful consent to call his cellular telephone.

26.     NCOF's "CRS" computer files pertaining to Plaintiff LaCourte do not indicate any consent by Plaintiff LaCourte, lawful or otherwise, to be contacted on his cellular telephone.

27.     Nevertheless, on November 11, 2010, NCOF called Plaintiff LaCourte on his cellular telephone from New Jersey, using an automatic telephone dialing system.  Plaintiff LaCourte has been provided with a recording of the telephone call.

28.     On December 7, 2010, NCOF again called Plaintiff LaCourte on his cellular telephone from New Jersey, using an automatic telephone dialing system.  Plaintiff LaCourte has been provided with a recording of the telephone call.

**PRERECORDED TELEPHONE MESSAGES LEFT AT PLAINTIFF JAMES LACOURTE'S RESIDENCE**

29.     In an effort to collect a debt, NCOF called and left prerecorded telephone messages at Plaintiff LaCourte's residence, using an automatic dialing-announcing device, on or about October 20, 2010, October 27, 2010, November 4, 2010, November 12, 2010, November 17, 2010 and November 24, 2010.

30.     The prerecorded telephone messages left by NCOF at Plaintiff LaCourte's

---

[1]     The referenced deposition was given by Iching Chao, Director of GCA Strategy Analytics for American Express, in an action styled *LaCourte v. JPMogan Chase* & Co., *et al.*, S.D.N.Y. Case No. 12-cv-09453-JSR.

6

residence were standardized messages used by NCOF for consumers residing in the State of New York.

31.     Defendant's standardized, prerecorded telephone messages did not provide all the information required by GBL §399-p(3).  Among other violations, all or some of those messages did not provide Defendant's address.

**TELEPHONE CALLS TO PLAINTIFF JOHN BARANSKI'S CELLULAR TELEPHONE**

32.     Plaintiff Baranski's wife applied for a Capital One credit card in April 1998. Plaintiff Baranski was a co-applicant to that credit card application.  The credit card application provided to Capital One did not provide Capital One with a cellular telephone number for Plaintiff Baranski.

33.     Plaintiff Baranski did not provide Capital One with lawful consent to call his cellular telephone.

34.     Plaintiff Baranski did not provide NCOF with lawful consent to call his cellular telephone.

35.     Nevertheless, many times during the Class Period, NCOF called Plaintiff Baranski on his cellular telephone, including on the following dates:  June 5, 2013, June 6, 2013, June 7, 2013, June 12, 2013, June 14, 2013, June 19, 2013, June 22, 2013, June 26, 2013, June 28, 2013, October 8, 2013, October 11, 2013, October 18, 2013, October 23, 2018, October 29, 2013, November 4, 2013 and November 12, 2013.

36.     Upon information and belief, one or more of those telephone calls was made using an automatic telephone dialing system, which information and belief is supported by the October 17, 2013 deposition testimony of former NCOF debt collector Charles Petro.

37.     Plaintiff Baranski is in possession of multiple recordings of telephone call(s) and voicemail messages made by NCOF to his cellular telephone during the Class Period.

**NCOF REFUSES ITS CONSENT TO AMEND PLAINTIFF LACOURTE'S COMPLAINT AND DIFFERENT CLAIMS PENDING IN THE SOUTHERN DISTRICT OF NEW YORK**

38.     Plaintiff LaCourte and Defendant are parties to a litigation asserting claims different from those asserted in this action pending in the United States District Court for the Southern District of New York, styled *LaCourte v. JPMorgan Chase & Co.*, Case No. 12-cv-9453 (JSR) (the "SDNY Action").

39.     During the pendency of discovery in the SDNY Action, Plaintiff LaCourte learned of his claims alleged in this action.

40.     Prior to filing this action, Plaintiff LaCourte sought Defendant's consent to amend his complaint in the SDNY Action to add the claims made in this action.

41.     Defendant, through its same legal counsel in both actions, denied its consent to litigate the claims made in this action in the SDNY Action.  In a November 4, 2013 email to Plaintiff LaCourte's counsel, Defendant's counsel stated:   "We will not agree to the amendment."

42.     Plaintiff LaCourte made a motion on November 5, 2013 to amend his complaint in the SDNY Action to add the new claims alleged in this action.  Defendant opposed that motion.  By oral ruling, on November 6, 2013, the Court in the SDNY Action denied the motion to amend.  That ruling was entered on the docket in a December 6, 2013 Order.

43.     Plaintiff LaCourte's motion to amend the SDNY Action was made after it was uncovered during discovery in the SDNY Action that NCOF used an automatic telephone dialing system to call Plaintiff LaCourte's cellular telephone.  Debt collector Charles Petro

formerly employed by NCOF testified during a deposition on October 17, 2013 as follows at

pages 27-28 of the transcript:

> A.    And that phone would also be a setup, with an autodialer system, so then
>       you would have the ability to hit certain keys and have it auto dial for you.
> Q.    Certain keys on the computer?
> A.    Yeah.
> Q.    So you would hit a key on the computer, and it would autodial the
>       telephone number?
> A.    Right.

44.    Plaintiff LaCourte's motion to amend the SDNY Action was made after it was

learned in discovery in the SDNY Action that NCOF left prerecorded telephone messages at

Plaintiff LaCourte's residence, using an automatic dialing-announcing device, on or about

October 20, 2010, October 27, 2010, November 4, 2010, November 12, 2010, November 17,

2010 and November 24, 2010.    Debt collector Charles Petro formerly employed by NCOF

testified during a deposition on October 17, 2013 as follows at page 115 of the transcript:

> Q.    Okay. The next call after October 20th?
> A.    27th, and it looks like it's the same result, same, and result "MN/LM" and
>       different 102 number.  It's "102710 1423 VOX."
> Q.    Okay.
> A.    And below that, "MO.DA."
> Q.    I can see that, do you know what – you don't have to read that, I'm just
>       curious if you know what that means.
> A.    I just know that the telephone messages were left for -- the dialer had left a
>       message on that telephone number on those particular days.  It says "You
>       have received a call..."  You know, "This is a call for, you know, James
>       LaCourte."

(ellipsis in original).  *See also* October 17, 2013 Charles Petro Tr. at 113-117.

## CLASS ACTION ALLEGATIONS

45.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil

Procedure on behalf of a class of persons (the "Class") in the United States and its territories

who received calls on their cellular telephones made by NCOF, including its debt collectors, employees and agents, using an automatic telephone dialing system from November 15, 2009 to the present (the "Class Period").

46.     Plaintiff LaCourte also brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a subclass of persons (the "GBL 399-p Subclass") residing in the State of New York who received prerecorded telephone messages made by NCOF, including its debt collectors, employees and agents, using an automatic dialing-announcing device, that did not provide the information required by GBL §399-p(3), from November 15, 2010 to the present (the "Subclass Period").

47.     Plaintiff Baranski bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a subclass of persons (the "CUTPA Subclass") residing in the State of Connecticut who received unauthorized prerecorded telephone messages made by NCOF, including its debt collectors, employees and agents, using an automatic dialing-announcing device during the Subclass Period.

48.     Plaintiffs do not know the exact size or identities of the members of the proposed Class or Subclasses, since such information is in the exclusive control of Defendants.  Plaintiffs believe that the Class and Subclasses encompass hundreds to thousands of individuals whose identities can be readily ascertained from Defendant's books and records.

49.     Common question of law and fact raised in this action concerning the Class' claims include the following:

(a)     Whether Defendant made telephone calls to cellular telephones;

(b)     Whether Defendant used an automatic telephone dialing system;

(c)     Whether Defendant violated the TCPA;

(d)     How Defendant obtained consumers' cellular telephone numbers;

(e)     Whether Plaintiff and the other members of the Class are entitled to damages, statutory damages, restitution, declaratory relief and/or injunctive relief as a result of Defendant's violations of the TCPA; and

(f)     Whether Defendant's violations of the TCPA were knowing and willful.

50.     Common question of law and fact raised in this action concerning the GBL 399-p and CUTPA Subclasses' claims include the following:

(a)     Whether Defendant left prerecorded messages on Subclass members' residential or cellular telephone numbers;

(b)     Whether Defendant used an automatic telephone dialing system;

(c)     Whether Defendant used an automatic dialing-announcing device;

(d)     Whether Defendant violated GBL §399-p(3);

(e)     Whether Defendant violated CUTPA;

(f)     Whether Defendant used standardized prerecorded messages;

(g)     Whether Plaintiff LaCourte and the other members of the GBL §399-p Subclass are entitled to damages, statutory damages, restitution, declaratory relief and/or injunctive relief as a result of Defendant's violations of GBL;

(h)     Whether Plaintiff John Baranski and the other members of the CUTPA Subclass are entitled to damages, statutory damages, restitution, declaratory relief and/or injunctive relief as a result of Defendant's violations of CUTPA; and

(i)     Whether Defendant's violations of GBL §399-p(3) and CUTPA were knowing

11

and willful.

51.     Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses.  Plaintiffs have retained able counsel with extensive experience in prosecuting consumer class actions.  The interests of Plaintiffs are coincident with, and not antagonistic to, the interests of the Class and Subclasses.

52.     The questions of law and fact common to the members of the Class and Subclasses predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

53.     The prosecution of separate actions by individual members of the Class and Subclasses would create a risk of inconsistent or varying adjudications with respect to individual Class and Subclass members, which would establish incompatible standards of conduct for Defendant.

54.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages, or statutory damages, suffered by individual members of the Class and Subclasses may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class and Subclasses individually to redress the wrongs done to them.  The Class and Subclasses are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.  Plaintiffs will encounter no difficulty in managing this action as a class action.

**EQUITABLE TOLLING**

55.     To the extent it is asserted by Defendant that any of Plaintiffs' individual claims are untimely, Plaintiffs' claims were equitably tolled until the filing of this action.  Plaintiffs could not have learned of their claims earlier due to Defendant's deceptive statements or omissions, as alleged herein.

56.     Class and Subclass members' claims alleged in this action against Defendant should be equitably tolled until the filing of this action.

## FIRST CAUSE OF ACTION

### VIOLATION OF TELEPHONE CONSUMER PROTECTION ACT

### (ALL PLAINTIFFS AND THE CLASS AGAINST DEFENDANT)

57.     Plaintiffs restate, reallege, and incorporate by reference the foregoing paragraphs.

58.     Plaintiffs, the members of the Class, and Defendant are "persons" under the TCPA.

59.     Section 227(b)(1)(A) of the TCPA makes it unlawful for:

[A]ny person within the United States, or any person outside the United States if the  recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. §227(b)(1)(A)(iii).

60.     Defendant violated TCPA Section 227(b)(1)(A)(iii) with respect to Plaintiffs and the Class.

61.      With respect to Plaintiff LaCourte, Defendant (including its agents and employees) called Plaintiff LaCourte's cellular telephone, using an automatic telephone dialing system, on at least two occasions during the Class Period, November 11, 2010 and December 7, 2010.

62.     Each such call to Plaintiff LaCourte's cellular telephone violated TCPA Section 227(b)(1)(A)(iii).  Defendant's violations were willful and knowing.  Even if not willful and knowing, Defendant violated the TPCA.

14

63.     With respect to Plaintiff Baranski, Defendant (including its agents and employees) called Plaintiff Baranski's cellular telephone using an automatic telephone dialing system on multiple occasions during the Class Period, including on the following dates: June 5, 2013, June 6, 2013, June 7, 2013, June 12, 2013, June 14, 2013, June 19, 2013, June 22, 2013, June 26, 2013, June 28, 2013, October 8, 2013, October 11, 2013, October 18, 2013, October 23, 2018, October 29, 2013, November 4, 2013 and November 12, 2013.

64.     Each such call to Plaintiff Baranski's cellular telephone violated TCPA Section 227(b)(1)(A)(iii).   Defendant's violations were willful and knowing.   Even if not willful and knowing, Defendant violated the TPCA.

65.     On each occasion during the Class Period when Defendant (including its agents and employees) called any Class member's cellular telephone, using an automatic telephone dialing system, without the requisite, prior and lawful consent of the Class member, Defendant violated TCPA Section 227(b)(1)(A)(iii).

66.     Defendant's violations of the TCPA challenged in this Complaint were done using an "automatic telephone dialing system," as that term is defined in 47 U.S.C. §227(a)(1) and the regulations, decisions, and/or interpretations of the Federal Communications Commission.

67.     Plaintiffs and the Class are entitled to pursue claims against Defendants during the Class Period for an injunction, pursuant to 47 U.S.C. §227(b)(3)(A), to enjoin Defendant's violations of TCPA Section 227(b)(1)(A)(iii). Plaintiffs and the Class seek to enjoin Defendant's violations of the TCPA.

68.     Plaintiffs and the Class are entitled to pursue claims against Defendants during

15

the Class Period for actual damages, or statutory damages of $500.00 for each violation, pursuant to 47 U.S.C. §227(b)(3)(B), to redress Defendant's violations of TCPA Section 227(b)(1)(A)(iii).  Plaintiffs and the Class seek damages to remedy Defendant's violations of the TCPA.

69.    Defendant's violations of TCPA Section 227(b)(1)(A)(iii) were willful and knowing.  As a result, Plaintiffs and the Class should be awarded three-times their actual damages, or statutory damages, pursuant to 47 U.S.C. §227(b)(3).

## SECOND CAUSE OF ACTION

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 399-P

### (PLAINTIFF LACOURTE AND GBL 399-P SUBCLASS AGAINST DEFENDANT)

70. Plaintiff LaCourte restates, realleges, and incorporates by reference the foregoing paragraphs.

71. Plaintiff asserts this claim on behalf of himself and all members of the GBL 399-P Subclass").

72. Plaintiff and the GBL 399-p Subclass members are "persons" within the meaning of GBL §399-p(1)(b).

73. Defendant's violations of the GBL Section 399-p challenged in this Complaint were done using an "automatic dialing-announcing device," as that term is defined in GBL §399-P(1)(A).

74. GBL §399-p(2) states: "No person shall operate an automatic dialing-announcing device, nor place any consumer telephone call, except in accordance with the provisions of this section. The use of such device by any person, either individually or acting as an officer, agent, or employee of a person operating automatic dialing-announcing devices, is subject to the provisions of this section."

75. GBL §399-p(3) states: "Whenever telephone calls are placed through the use of an automatic dialing-announcing device, such device shall do all of the following:

(a) state at the beginning of the call the nature of the call and the name of the person or on whose behalf the message is being transmitted and at the end of such message the address, and telephone number of the person on whose behalf the message is

17

transmitted, provided such disclosures are not otherwise prohibited or restricted by any federal, state or local law; and

(b)      disconnect the automatic dialing-announcing device from the telephone line upon the termination of the call by either the person calling or the person called."

76.      Defendant violated GBL §399-p(3)(A) with respect to Plaintiff LaCourte and the GBL 399-p Subclass.

77.      Among its violations, Defendant's prerecorded telephone messages to Plaintiff LaCourte and the GBL 399-p Subclass did not provide Defendant's address.  Defendant's violations were willful and knowing.

78.      Defendant's prerecorded telephone message used in New York was quoted in a decision of this Court, *Marisco v. NCO Fin. Sys., Inc*., No. 12-cv-06220, 2013 WL 2285195, at *1 (E.D.N.Y. May 23, 2013).

79.      Upon information and belief, Defendant employed substantially similar prerecorded telephone messages as quoted in the *Marisco* decision during the Subclass Period.

80.      Upon information and belief, Defendant's prerecorded telephone messages are scripted, and reflected in Defendant's policy, procedure, training, and/or standard operating procedure manuals.

81.      With respect to Plaintiff LaCourte, Defendant (including its agents and employees) called Plaintiff LaCourte's residence, using an automatic dialing-announcing device, and left a prerecorded message on at least two occasions during the Subclass Period, on or about November 17, 2010 and November 24, 2010.  Each such call to Plaintiff LaCourte's

18

residence telephone violated GBL §399-p(3).  Defendant's violations were willful and knowing.
Even if not willful and knowing, Defendant violated GBL §399-p(3).

82.     Defendant left other prerecorded messages at Plaintiff LaCourte's residence,
using an automatic dialing-announcing device, on or about October 20, 2010, October 27, 2010,
November 4, 2010 and November 12, 2010, that violated GBL §399-p(3).

83.     Plaintiff LaCourte and the GBL 399-p Subclass are entitled to pursue claims
against Defendant during the Subclass Period for damages, statutory damages, treble damages,
injunctive relief, costs and attorney's fees pursuant to GBL §399-p(9) to redress Defendants'
violations of GBL §399-p(3).  Plaintiff LaCourte and the GBL 399-p Subclass seek damages,
statutory damages, treble damages, injunctive relief, costs and attorney's fees to remedy
Defendant's violations of GBL §399-p.

84.     Plaintiff LaCourte and the GBL 399-p Subclass seek damages or statutory
damages in the amount of $50.00 for each violation.

85.     Defendant's violations of GBL §399-p(3) were willful and knowing.  As a result,
Plaintiff LaCourte and the GBL 399-p Subclass should each be awarded three-times their actual
damages, up to $1,000.00.

86.     Plaintiff LaCourte and the GBL 399-p Subclass seek to enjoin Defendant's
violations of GBL §399-p(3).

**THIRD CAUSE OF ACTION**

**Violation of CONNECTICUT Unfair Trade Practices Act
General Statutes, §42-110a, *et seq*.**

**(PLAINTIFF BARANSKI AND CUTPA SUBCLASS AGAINST DEFENDANT)**

87.     Plaintiff Baranski restates, realleges and incorporates by reference the foregoing paragraphs.

88.     Plaintiff Baranski asserts this claim on behalf of himself and all members of the CUTPA Subclass.

89.     Plaintiff Baranski and the CUTPA Subclass members are "persons" as set forth in CUPTA §42-110a.

90.     CUTPA §42-110b states: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct or any trade or commerce."

91.     Defendant's violations of TCPA constitute violations of CUTPA §42-110b with respect to Plaintiff Baranski and the CUTPA Subclass.  Specifically, §42-110g(a) states: "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages."

92.     Plaintiff Baranski has suffered an ascertainable loss because NCOF's calls to his cell phone unnecessarily reduced the number of minutes he is allotted per month in his cell phone plan, which has limited minutes as a part of his cellular rate plan.  As a result of Defendant's violations of the TCPA, Plaintiff Baranski and the CUTPA Subclass have suffered an ascertainable loss and been damaged.

93.     Upon information and belief, Defendant's prerecorded telephone messages are

20

scripted, and reflected in Defendant's policy, procedure, training, and/or standard operating procedure manuals.

94.    During the Subclass Period, Defendant (including its agents and employees) called Plaintiff Baranski's cellular telephone numerous times using an automatic dialing-announcing device and left messages, including on the following dates: June 5, 2013, June 6, 2013, June 7, 2013, June 12, 2013, June 14, 2013, June 19, 2013, June 22, 2013, June 26, 2013, June 28, 2013, October 8, 2013, October 11, 2013, October 18, 2013, October 23, 2018, October 29, 2013, November 4, 2013 and November 12, 2013.

95.    Each such call to Plaintiff Baranski's cellular telephone violated the TCPA and constituted violations of CUTPA Sec. 42-110b. Defendant's violations were willful and knowing.

96.    Plaintiff Baranski and the CUTPA Subclass are entitled to pursue claims against Defendant during the Subclass Period for damages, injunctive relief, costs and attorney's fees pursuant to CUTPA §42-110g(d) to redress Defendant's violations of CUTPA §42-110b. Plaintiff Baranski and the CUTPA Subclass seek damages, injunctive relief, costs and attorney's fees pursuant to CUTPA to remedy Defendant's violations of CUPTA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

A.     An order certifying this case as a class action under Fed. R. Civ. P. Rule 23, and appointing Plaintiffs and their counsel to represent the Class and Subclasses;

B.     An order declaring that Defendant's alleged acts and practices constitute violations of the TCPA;

C.     An order declaring that Defendant's alleged acts and practices constitute violations of the New York General Business Law §399-p and CUTPA;

D.     Statutory damages pursuant to the TCPA of $500.00 for each violation, trebled for Defendant's willful and knowing violations of the TCPA;

E.     Three-times Plaintiffs' and the Subclasses' actual and/or statutory damages for Defendant's violations of the TCPA;

F.     An injunction to enjoin Defendant's violations of the TCPA;

G.     Statutory damages pursuant to GBL §399-p, including where appropriate $50.00 for each violation;

H.     Actual damages for injuries suffered by Plaintiffs and the other members of the Class and Subclasses;

I.     A permanent injunction against Defendant to enjoin continuing to harm Plaintiffs and the other members of the Class and Subclasses;

J.     All other equitable remedies available to Plaintiffs and the other members of the Class and Subclasses;

K.     Reasonable attorney's fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury to the extent authorized by law.

DATED: January 17, 2014

> **SCOTT+SCOTT,**
> **ATTORNEYS AT LAW, LLP**
>
> s/ Joseph P. Guglielmo
> Joseph P. Guglielmo
> jguglielmo@scott-scott.com
> Joseph Cohen (*pro hac vice*)
> jcohen@scott-scott.com
> The Chrysler Building
> 405 Lexington Avenue, 40th floor
> New York, NY 10174
> Tel. (212) 223-6444
>
> - and -
>
> David R. Scott (*pro hac vice*)
> drscott@scott-scott.com
> Erin Green Comite (*pro hac vice*)
> ecomite@scott-scott.com
> 156 South Main Street
> P.O. Box 192
> Colchester, CT 06415
> Tel. (860) 537-5537
>
> **TUSA P.C.**
>
> /s/ Joseph S. Tusa
> Joseph S. Tusa
> joseph.tusapc@gmail.com
> 1979 Marcus Avenue, Ste. 201
> Lake Success, NY  11042
> Tel. (516) 622-2212

**GISKAN SOLOTAROFF ANDERSON
 & STEWART LLP**

/s/ Oren Giskan_____
Oren Giskan
ogiskan@gslawny.com
Catherine E. Anderson
canderson@gslawny.com
11 Broadway, Ste. 2150
New York, New York 10004
Tel. (212) 847-8315

**LINDH FOSTER, LLC**
Eric L. Foster (*pro hac vice*)
efoster@lindhfoster.com
2 Johnny Cake Hill Road
Old Lyme, CT  06371
Tel. (203) 533-4321

***Attorneys for Plaintiffs
and proposed Class Counsel***