UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
BARANSKI, et al.,

        Plaintiffs,                      MEMORANDUM AND ORDER

    - against -                       13 CV 6349 (ILG) (JMA)

NCO FINANCIAL SYSTEMS, INC.,

        Defendant.
------------------------------------------------------x
GLASSER, United States District Judge:

        Plaintiffs John Baranski ("Baranski") and James LaCourte ("LaCourte" and together with Baranski, "Plaintiffs"), on behalf of themselves and others similarly situated, bring this action against defendant NCO Financial Systems, Inc. ("NCO"), alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), New York General Business Law § 339-p ("GBL"), and the Connecticut Unfair Trade Practices Act § 42-110a, et seq. ("CUPTA"). Currently before the court are two motions: NCO's motion to sever, dismiss, and/or transfer venue and NCO's motion to strike Plaintiffs' amended complaint. For the reasons that follow, NCO's motion to dismiss Plaintiffs' claims is GRANTED and the remaining relief sought by NCO is DENIED as moot.

## BACKGROUND

### I. Facts & Procedural History

        The following facts are taken from Plaintiffs' complaint, Dkt. No. 1 ("Compl."), and other documents the Court may consider, and are accepted as true for purposes of deciding this motion. NCO is a Pennsylvania corporation headquartered in Horsham, Pennsylvania. Compl. ¶ 12. NCO is a debt collection agency. Id. Plaintiffs allege that,

1

as part of its debt collection activities, NCO uses an automatic telephone dialing system ("ATDS"), as defined in the TCPA and the GBL. Id. ¶¶ 13–16.

LaCourte, a resident of Huntington, New York, was previously the holder of an American Express credit card. Id. ¶¶ 10, 22. In an effort to collect a debt on this American Express account, NCO called LaCourte at his residence and left prerecorded voice messages on October 20, 2010, October 27, 2010, November 4, 2010, November 12, 2010, November 17, 2010, and November 24, 2010. Id. ¶ 29. In addition, NCO called LaCourt on his cellular telephone on November 11, 2010 and December 7, 2010. Id. ¶¶ 27–28. LaCourte believes that all of these calls were made using an ATDS. Id. ¶¶ 27–29. At the time of these calls, LaCourte had settled and paid his debt on the American Express account. Id. ¶ 22.

Baranski, a resident of North Grosvenordale, Connecticut, was the co-holder of a Capital One credit card with his wife. Id. ¶¶ 11, 32. Baranski received phone calls on his cellular telephone on several occasions, including on June 13, 2013, from NCO related to a debt on his Capital One account. Id. ¶ 35. Baranski believes that one or more of these calls was made using an ATDS. Id.

Plaintiffs bring this action on behalf of a nationwide class of individuals who received calls on their cellular telephones from NCO in violation of the TCPA. Id. ¶ 36. In addition, LaCourte purports to represent a sub-class of New York residents who received calls from NCO in violation of the GBL. Id. ¶ 37. Baranski, in turn, purports to represent a sub-class of Connecticut residents who received prerecorded telephone messages from NCO in violation of the CUTPA. Id. ¶ 38. Plaintiffs do not know the exact size of the proposed class or sub-classes, or the identities of the members thereof,

but they estimate that the class may encompass "hundreds to thousands of individuals." Id. ¶ 39.

Prior to commencing this action, on December 28, 2012 LaCourte filed a complaint in the Southern District of New York against NCO and other defendants. LaCourte v. JP Morgan Chase & Co., No. 12-cv-9453(JSR) (the "SDNY Action") [Dkt. No. 1]. The SDNY Action was based on the same debt collection activities underlying LaCourte's claims in this case. Id. LaCourte asserted claims under the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, New York State statutory law, and common-law civil conspiracy. Id. Following motions to dismiss from several of the defendants, LaCourte's claims against certain of the defendants—though not NCO—were dismissed by order dated April 25, 2013. See SDNY Action, Dkt. No. 80 (the "SDNY M&O") at 1–2. LaCourte's civil conspiracy claims were dismissed in their entirety. Id. His Fair Debt Collection Practices Act claims were dismissed to the extent that they were based on calls the occurred outside of the statute of limitations. Id.

After the close of discovery, LaCourte sought to amend his complaint in the SDNY Action to add claims under the TCPA and the GBL and file a motion for class certification. SDNY Action, Dkt. No. 90. His request to amend the complaint was denied as untimely. Id. Following a motion for summary judgment, all of LaCourte's remaining claims were dismissed by order dated February 21, 2014, and judgment was entered on February 24, 2014. SDNY Action, Dkt. Nos. 103, 104. On March 4, 2014, LaCourte filed a notice of appeal. SDNY Action, Dkt. No. 106.

Plaintiffs commenced this action on November 15, 2013 by filing a complaint in this Court. Dkt. No. 1. On December 11, 2013, NCO filed a motion seeking to sever the claims of the two Plaintiffs pursuant to Rule 21, to dismiss Plaintiffs' claims pursuant to

3

Rule 12(b)(6), or in the alternative to transfer their claims pursuant to 28 U.S.C. § 1404(a). Dkt. No. 6-1 ("NCO's Mem."). On January 17, 2014, Plaintiffs filed their opposition, arguing that Plaintiffs' claims should not be severed or transferred. Dkt. No. 22 ("Pls.' Opp'n"). Rather than addressing NCO's motion to dismiss, Plaintiffs filed an amended complaint along with their Opposition. Dkt. No. 21 ("FAC"). On February 3, 2014, NCO filed its reply. Dkt. No. 23 ("NCO's Reply"). That same day, NCO filed a motion to strike the FAC pursuant to Rule 12(f), arguing that the Amended Complaint was not timely filed under Rule 15(a)(1)(B). Dkt. No. 24 ("NCO's Mot. to Strike"). On February 20, 2014, Plaintiffs filed their opposition to the motion to strike. Dkt. No. 25 ("Pls.' Strike Opp'n"). On February 22, 2014, NCO filed its reply. Dkt. No. 26 ("NCO's Strike Reply").

Since NCO's motions have been fully briefed, the procedural posture of this case has continued to develop. On February 25, 2014, NCO provided the Court with notice that LaCourte's SDNY Action had been dismissed. See Dkt. No. 27. NCO argues that this decision has preclusive effect on LaCourte's claims and concedes that its motion to transfer LaCourte's claims is therefore moot. Id. On February 27, 2014, Plaintiffs informed the Court that they had petitioned the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407 to centralize this action with two class actions pending against NCO in the Central District of California. See Dkt. No. 28. Indeed, the JPML is currently considering Plaintiffs' petition. In re NCO Fin. Sys., Inc. Protection Act (TCPA) Litig., MDL No. 2533. This Court retains jurisdiction over NCO's pending motions until the JPML enters an order transferring the action. See, e.g., In re Plumbing Fixture Cases, 298 F.Supp. 484, 495–96 (J.P.M.L. 1968).

**II.    Legal Standard**

4

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, the plaintiff's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" by the plaintiff will not suffice. Id. (internal quotations and citations omitted). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, on a motion to dismiss for failure to state a claim, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." York v. Ass'n of the Bar of City of N.Y., 286 F.3d 122, 125 (2d Cir. 2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Serdarevic v. Centex Homes, LLC, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quoting Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999)). The Court will take judicial notice of the docket of the SDNY Action, as the documents filed in that proceeding are matters of public record. See, e.g., Motorola Credit Corp. v. Uzan, 561 F.3d 123, 127 (2d Cir. 2009).

## DISCUSSION

### I. The FAC Is Untimely

Rule 15(a)(1) of the Federal Rules of Civil Procedure provides that a pleading may be amended "as a matter of course" within "21 days after service of a motion under Rule 12(b)." After 21 days, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiffs filed the FAC 37 days after NCO filed its motion to dismiss, without obtaining NCO's consent or leave of the court. The FAC is therefore untimely under Rule 15(a)(1).

Plaintiffs assert that the Court extended the time for amendment as a matter of course by its scheduling order dated December 23, 2013 [Dkt. No. 18]. Pls.' Strike Opp'n at 5–6. Plaintiffs are simply incorrect. The order did not address amending the Complaint or even refer generally to a date by which Plaintiffs could "respond" to the motion to dismiss. Rather, the scheduling order specifically—and only—approved the parties' proposed briefing schedule for NCO's motion to sever, dismiss, or transfer and specified the dates by which Plaintiffs' Opposition brief and NCO's Reply brief would be filed. Dkt. No. 18. Indeed, this was precisely what the parties requested in their letter.

6

See Dkt. No. 14. Because the scheduling order did not provide otherwise, the deadlines specified in Rule 15 apply and the FAC is untimely.

That said, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In their Strike Opposition, Plaintiffs did not seek leave to amend the Complaint. But in light of the liberal amendment policy underlying Rule 15, the Court will construe the FAC as a motion for leave to amend and accordingly will consider whether the proposed amendments would cure any deficiencies in the Complaint, or whether amendment would be futile. See, e.g., Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany, 615 F.3d 97, 114 (2d Cir. 2010) ("It is well-established that one good reason to deny leave to amend is when such leave would be futile, specifically when the additional information does not cure the complaint.") (quotation omitted).

## II. LaCourte's Claims Are Precluded by the Decision in the SDNY Action

In its motion to dismiss, NCO argued that dismissal was warranted because Plaintiffs failed to state claims under the TCPA, the GBL, and the CUTPA. When NCO informed the Court of Judge Rakoff's decision and judgment in SDNY Action, it argued for the first time that LaCourte's claims should be dismissed on res judicata grounds. Dkt. No. 27. Specifically, NCO asserts that, because LaCourte's claims in this case arise out of the same phone calls that formed the basis for the SDNY Action, that decision has a preclusive effect even though LaCourte did not assert TCPA or GBL claims in that action. Id. at 1–2.

"[A] judgment upon the merits in one suit is res judicata in another where the parties and subject-matter are the same, not only as respects matters actually presented

to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end." Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) (quoting Grubb v. Pub. Utils. Comm'n of Ohio, 281 U.S. 470, 479 (1930)) (alteration in original). This bar extends to claims based on different legal theories of liability as well as to claims under different statutes. Id. at 38–39; see also Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Servs., Inc.), 762 F.2d 185, 193 (2d Cir. 1985) ("New legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata.").

It is clear that the SDNY Action involved the same parties as the instant case and arose out of the same events—the calls from NCO to LaCourte in October, November, and December of 2010. Compare Compl. ¶¶ 27–29, with SDNY Action, Dkt. No. 34 (first amended complaint) ¶ 38. LaCourte's claims here do not involve a separate transaction. The only new allegations involve NCO's use of an ATDS to make those calls. It is clear, then, that "all the facts necessary to support the claims before us now were pleaded, or could have been pleaded, in the first action commenced by [LaCourte] in the Southern District." Teltronics, 762 F.2d at 193.

LaCourte makes two arguments in opposition. First, he argues that his claims here are distinct because they are premised on information learned after the complaint in the SDNY Action was filed. Pls.' Opp'n at 9–10. This is irrelevant. "As a general rule, newly discovered evidence does not preclude the application of res judicata." Saud v. Bank of N.Y., 929 F.2d 916, 920 (2d Cir. 1991). Indeed, the new allegations here involve only the manner in which the calls were made. They are not new, independent facts but merely part of the same "core of operative facts" that formed the basis of the SDNY Action. See Norman v. Niagara Mohawk Power Corp., 873 F.2d 634, 638 (2d Cir. 1989).

In such circumstances, the proper response is to amend the complaint in the first action to allege the newly discovered facts and any new theories of liability and, indeed, LaCourte did precisely that. SDNY Action, Dkt. No. 90. The fact that his motion for leave to amend was denied does not entitle him to file a second lawsuit, but only to appeal that denial. See, e.g., Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 16 (1st Cir. 2010).

Second, LaCourte argues that his pending appeal makes the judgment in the SDNY Action non-final for purposes of res judicata. Dkt. No. 30. LaCourte is simply incorrect. "A final judgment by a district court has preclusive effect even though the judgment is pending on appeal." Amcast Indus. Corp. v. Detrex Corp., 45 F.3d 155, 160 (7th Cir. 1995); see also United States v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 905 F.2d 610, 621 (2d Cir. 1990). And indeed it could not be otherwise, for this is precisely how res judicata works. "[T]he only preclusion is of other suits, or of specific issues in other suits; the losing party is not precluded from pressing his appeal!" Amcast, 45 F.3d at 160. LaCourte's appeal of the decision in the SDNY Action is the proper vehicle for addressing his TCPA and GBL claims against NCO. His claims in this action are therefore dismissed.

### III. Baranski Fails To State a Claim Under the TCPA

The TCPA provides, in relevant part

> It shall be unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1). An ATDS, for purposes of the TCPA, is a device with "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers." Id. § 227(a)(1).

NCO argues that Baranski's TCPA claim should be dismissed because it merely alleges, in conclusory fashion, that NCO used an "automatic telephone dialing system" and contains no factual allegations permitting such an inference. NCO's Mem. at 13–14; NCO's Reply at 7–8. Plaintiffs did not address this argument in their Opposition, but instead seek to amend to the Complaint to add deposition testimony from a former employee of NCO, that Plaintiffs claim is proof of NCO's use of an ATDS. See FAC ¶¶ 43–44.

NCO is correct that Plaintiffs must do more than simply parrot the statutory language. Although there is no binding precedent in this circuit, the vast majority of courts to have considered the issue have found that "[a] bare allegation that defendants used an ATDS is not enough." Jones v. FMA Alliance Ltd., No. 13-11286-JLT, 2013 WL 5719515, at *1 (D. Mass. Oct. 17, 2013) (quotation omitted); accord Gragg v. Orange Cab Co., 942 F. Supp. 2d 1111, 1114 (W.D. Wash. 2013); Johansen v. Vivant, Inc., No. 12 C 7159, 2012 WL 6590551, at *2–3 (N.D. Ill. Dec. 18, 2012); Kramer v. Autobytel, Inc., 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010); Abbas v. Selling Source, LLC, No. 09 CV 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009). Such an allegation is "a bare legal conclusion entitled to no weight." Abbas, 2009 WL 4884471, at *3. Plaintiffs need not plead "specific technical details" regarding NCO's use of an ATDS, but they must at least describe, in laymen's terms, the facts about the calls or the circumstances surrounding the calls that make it plausible that they were made using an ATDS. See Johansen, 2012 WL 6590551, at *3.

Plaintiffs' proposed amendments do not cure the deficiencies in the Complaint. The FAC contains no new facts about the calls received by Baranski that permit an inference that they were made using an ATDS. As various courts have made clear, the use of an ATDS can be plausibly inferred from allegations regarding, for example, "the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, [or] the generic content of the message he received." Johansen, 2012 WL 6590551, at *3. Plaintiffs make no such allegations, or even any allegation that Baranski received prerecorded messages.[1]

The only additional allegation in support of Baranski's TCPA claim in the FAC relates to the deposition testimony of a former NCO employee, Charles Petro ("Petro"), which was obtained in discovery in the SDNY Action. See FAC ¶¶ 36, 38–44. But this testimony fails to support a plausible inference that an ATDS was used to call Baranski for two reasons. First, despite the terminology used in questioning Petro, it is far from clear that the device described constitutes an ATDS under the TCPA. An ATDS must have the capacity to both store and generate telephone numbers to be called and "to dial such numbers." 47 U.S.C. § 227(a)(1). But Petro confirmed only that he "would hit a key on the computer, and it would autodial the telephone number[.]" FAC ¶ 43. Although his testimony does suggest that the device used by NCO had the capacity to "store or produce telephone numbers to be called," it does not suggest that it had the capacity "to dial such numbers." Petro's testimony does not support the inference that the calls could be made without human intervention.

---

[1] The absence of such allegations is troubling, since Baranski purports to represent a sub-class of individuals "who received unauthorized prerecorded telephone messages" from NCO. Compare FAC ¶ 35 (describing the calls to Baranski), with id. ¶ 47 (describing the calls made to the sub-class).

Second, and more importantly, Petro's testimony says nothing about the calls made to Baranski. In the excerpt quoted in the FAC, Petro spoke about calls made to LaCourte—calls that were made in 2010. Id. ¶ 44. Even if this testimony established that NCO made use of an ATDS in 2010, it would not support an inference that an ATDS was used nearly three years later to call Baranski. Indeed, several of the calls at issue were made <u>after</u> Petro testified regarding this historical practice at NCO. See id. ¶ 35. When viewed in conjunction with Plaintiffs' failure to point to anything about the calls to Baranski that suggests the use of an ATDS, Petro's testimony simply is not enough to make Baranski's TCPA claim plausible on its face. Accordingly, Baranski's TCPA claim is dismissed.

## IV. The Court Declines to Exercise Supplemental Jurisdiction Over Baranski's CUTPA Claim

The Court may decline to exercise supplemental jurisdiction over state law claims if the Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). It is well-settled that "if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well." <u>Brzak v. United Nations</u>, 597 F.3d 107, 113–14 (2d Cir. 2010) (quotation omitted). Baranski's CUTPA claim is therefore dismissed without prejudice in order to allow him to pursue that claim in state court if he so chooses. See <u>Cave v. E. Meadow Union Free Sch. Dist.</u>, 514 F.3d 240, 250 (2d Cir. 2008).

## CONCLUSION

For the foregoing reasons, NCO's motion to dismiss is GRANTED, and its motions to sever, transfer, and strike the amended complaint are DENIED as moot.

SO ORDERED.

12

Dated:     Brooklyn, New York
           March 21, 2014

                                        /s/
                                        I. Leo Glasser
                                        Senior United States District Judge